UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------
DMITRY BARTENEV on behalf of
himself and all other similarly situated
consumers,

                                    Plaintiff,

      -against-

EQUIFAX INFORMATION SERVICES, LLC
AND LVNV FUNDING LLC

                                 Defendants.

-----------------------------------------------------------

## COMPLAINT FOR VIOLATIONS OF THE FCRA

### *Introduction*

1. Plaintiff Dmitry Bartenev seeks redress for the illegal practices of Equifax Information Services, LLC ("Equifax"), and LVNV Funding LLC ("LVNV") in violation of the Fair Credit Reporting Act, 15. U.S.C. § 1681, et seq. (FCRA) and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. (FDCPA) against LVNV Funding LLC only. Plaintiff brings this matter as a class action suit only against LVNV.

2. The FCRA prohibits furnishers of credit information for falsely and inaccurately report consumers' credit information to credit reporting agencies.

### *Parties*

3. Plaintiff is a citizen of the State of Florida who resides within this District.

4. Plaintiff is a consumer as defined by 15 U.S.C. § 1681a et. seq.

5. Defendant Equifax is a Credit Reporting Agency ("CRA") that engages in the business of maintaining and reporting consumer credit information.

6. Upon information and belief, Defendant Experian's principal place of business is located in Atlanta, Georgia.

7. Defendant LVNV "furnisher of information" within the meaning of the FCRA [15 U.S.C. § 1681s-2 et seq.].

8. Upon information and belief, Defendant LVNV's principal place of business is located in Greenville, South Carolina.

## *Jurisdiction and Venue*

9. This court has jurisdiction under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

10. All conditions precedent to the bringing of this action have been performed.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as the acts and transactions that give rise to this action occurred, in substantial part, in this district.

## *Allegations Particular to Dmitry Bartenev*

12. Plaintiff is a consumer who is the victim of inaccurate reporting by Defendant Equifax and has suffered particularized and concrete harm.

13. Plaintiff disputed an LVNV account via a letter dated February 10, 2023.

14. Plaintiff stated as follows in part: "I contacted the original creditor Capital One on 10/20/2021 regarding the account being fraudulent. Capital One agreed to delete the account from their records and the credit bureaus due to the account being fraudulent. Capital One then sold the fraudulent account to LVNV Funding which is illegal as the account is fraudulent and Capital One agreed of it being fraudulent."

15. On or about June 26, 2023 Equifax issued a credit report whereby the LVNV entry was not corrected.

16. 15 U.S.C. § 1681i provides the procedure by which a consumer reporting agency ("CRA") must abide whenever a consumer disputes an item contained in his or her credit file.

17. Section 1681i(a) outlines the investigation that the CRA must undertake after the consumer notifies the CRA of the dispute.

18. The FCRA is intended "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." Cortez v. Trans Union, LLC, 617 F.3d 688, 706 (3d Cir. 2010).

19. Defendants violated § 1681i(c) of the FCRA, since Plaintiff disputed the accuracy of the above-mentioned information in Plaintiff's credit file and then notified Equifax of the said dispute.

20. Despite the dispute from the Plaintiff, Equifax has completely abdicated its obligations under federal law and has instead chosen to merely "parrot" whatever its customer, LVNV has chosen to say.[1]

21. Defendant LVNV has promised through its subscriber agreement or contracts to accurately update accounts but LVNV has willfully, maliciously, recklessly, wantonly, and/or negligently failed to follow this requirement as well as the requirements set forth under the FCRA and state law, which has resulted in the erroneous information on Plaintiff's credit report.

22. The United States Court of Appeals for the Fourth Circuit held, that the FCRA requires

---

[1] Jones v. Experian Info. Solutions, Inc., 982 F. Supp. 2d 268, 274–74 (S.D.N.Y. 2013) (CRA's duties consist of more than forwarding dispute to the furnisher and relying on response, citing *Gorman v. Experian*; "Defendant's duty under the statute is not necessarily fulfilled merely by the furnisher for information"); Gorman v. Experian Info. Solutions, Inc., 2008 WL 4934047 (S.D.N.Y. Nov. 19, 2008) (FCRA demands more than forwarding the dispute to the furnisher and relying on the furnisher's response); Frost v. Experian, 1998 WL 765178 (S.D.N.Y. Nov. 2, 1998) (required to go behind the court record if notified that it is inaccurate)

...

furnishers to conduct detailed examinations of the documents underlying customer transactions before responding to inquiries about a customer's debt, instead of relying on computer databases that provide convenient, but potentially incomplete or inaccurate customer account information. See Johnson v, MBNA America Bank, No. 03123S (February 11, 2004).

23. The FCRA was enacted "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 52, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007). (To achieve this goal, it "imposes some duties on the sources that provide credit information to CRAs, called 'furnishers' in the statute."), Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1162 (9th Cir. 2009). (These duties are triggered whenever a credit reporting agency notifies the furnisher that a consumer has disputed information that it provided to the agency. Id.; 15 U.S.C. § 1681s-2(b) (1). Once this occurs, the furnisher must "conduct an investigation with respect to the disputed information," "review all relevant information provided by the consumer reporting agency" about the dispute, and correct any inaccuracies. Id.), see also Nelson v. Chase Manhattan Mortg. Corp., 282 F.3d 1057, 1059 (9th Cir. 2002). (Describing furnisher's duties under the FCRA). If the furnisher fails to carry out any of these duties, the consumer who initiated the dispute may sue the furnisher. 15 U.S.C. § 1681o; *Nelson*, 282 F.3d at 1059. See also Haynes v. Chase Bank U.S.A., N.A., Docket No. 7:18-cv-03307 (S.D.N.Y. Apr 16, 2018). ([The Judge] conclude[s], therefore, based on the foregoing allegations in the complaint that the complaint, if true -- and I need to accept it as true -- states a cause of action against Chase for breach of the discharge under Sections 727 and 524(a)(2) of the Bankruptcy

Code for intentionally assisting in the collection of discharged debt by not correcting the debtors' credit reports to reflect that the debt has, in fact, been discharged.), Venugopal v. Citibank, National Association, Docket No. 5:12-cv-02452 (N.D. Cal. May 14, 2012). (Construed in the light most favorable to Plaintiff, this report supports Plaintiff's claim that LVNV continued to misreport Plaintiff's debt history even after Plaintiff initiated his dispute with Experian. Accordingly, he has stated a valid claim under the FCRA.)

24. It is only after receiving the CRA's notice of the consumer's dispute that a furnisher can be liable to the consumer for its failure to participate in the investigation process as required by the statute. A failure of the CRA to forward the dispute to the furnisher relieves the furnisher of its obligation to investigate.

25. However, the furnisher that establishes this defense necessarily establishes the consumer's alternative claim that the CRA breached its statutory duty to notify the furnisher.[2]

26. These litigation alternatives illustrate that whether the CRA or the furnisher (or both) is ultimately responsible for the failure to properly investigate the consumer's dispute is virtually impossible to know prior to formal discovery. Accordingly, the consumer is well advised to join claims against both the furnisher and the CRA when suing either for breaching its investigation duties. This proposition has been expressly endorsed by at least one federal court.

---

[2] Snyder v. Nationstar Mortg. L.L.C., 2015 WL 7075622 (N.D. Cal. Nov. 13, 2015) (allegation of an inaccurate tradeline that the furnisher failed to correct or delete as part of the investigation process necessarily states a claim for a violation of that duty under § 1681s-2(b)(1)(E)); Abdelfattah v. Carrington Mortg. Serv. L.L.C., 2013 WL 495358 (N.D. Ca. Feb. 7, 2013) (complaint stated a claim for relief because it alleged a objectively false debt balance that failed to account for foreclosure sale proceeds, and thus showed that the furnisher "did not correct the report after notice and time to investigate)

27. Any furnisher who negligently fails to comply with any of its investigation duties is liable to the consumer for actual damages, the costs of litigation, and attorney fees. If the violation is willful, the furnisher is liable for actual damages or minimum statutory damages between $100 and $1000, for punitive damages, as well as for costs and attorney fees.

28. As in all FCRA cases, a necessary element of establishing furnisher liability is proof of damages—actual, statutory, or punitive. Thus, the consumer must either establish a willful violation permitting an award of statutory and punitive damages or have suffered damages in connection with a negligent violation. The FCRA is not a strict liability statute, so merely showing that the furnisher did not comply with one of its duties will not establish liability.

29. If LVNV had performed a reasonable investigation of Plaintiff's dispute, Plaintiff's matter with LVNV would not have appeared in the Plaintiff's report.

30. Inaccurate information was included in the Plaintiff's credit report.

31. The inaccuracy was due to the Defendants' failure to follow reasonable procedures to assure maximum possible accuracy.[3]

32. The Plaintiff suffered injury.

---

[3] Saindon v. Equifax Info. Serv., 608 F. Supp. 2d 1212, 1217 (N.D. Cal. 2009) ("In its motion and declarations, [Equifax] does lay out a string of application procedures that include both automated and manual checks by the agency. But giving all reasonable inferences to the plaintiff, the monitoring and reinvestigation procedures could be seen as quite limited. The procedures could be seen by a jury as merely basic automated checks that catch missing data fields on submitted forms, which do not go to the heart of whether a source of information is trustworthy. For example, when a consumer files a complaint contesting the accuracy of an item on his or her credit report, the sole action taken by Equifax is to contact the source of the information to verify if it is accurate. If the source says that it is, the inquiry ends . . . This does virtually nothing to determine the actual credibility of the source—which is what plaintiff asserts is lacking—or so a jury could reasonable conclude. While defendant does have some procedures that include a manual review of some disputes, a jury could reasonably find that almost none of the procedures include a review of the integrity of the information source itself. "), Sharf v. TransUnion, L.L.C., 2015 WL 6387501 (E.D. Mich. Oct. 22, 2015) (student loan servicer willfully violated FCRA by failing to conduct any investigation, deferring entirely to lender to determine accuracy), Saenz v. Trans Union, L.L.C., 2007 WL 2401745, at *7 (D. Or. Aug. 15, 2007) (when CRA is on notice that information is suspect, "it is not reasonable for the [CRA] simply to verify the creditor's position without additional investigation") White v. Trans Union, 462 F. Supp. 2d 1079 (C.D. Cal. 2006) (rejecting argument that confirmation of the accuracy of information from its original source is a reasonable inquiry as a matter of law)

33. The consumer's injury was caused by the inclusion of the inaccurate entry.

34. Plaintiff applied for a mortgage.

35. It was recommended to him not to proceed with a mortgage because of LVNVas he would have to pay a higher rate.

36. At all times pertinent hereto, Defendants were acting by and through their agents, servants and/or employees, who were acting within the scope and course of their employment, and under the direct supervision and control of the Defendants herein.

37. At all times pertinent hereto, the conduct of the Defendants, as well as that of their agents, servants and/or employees, was malicious, intentional, willful, reckless, negligent and in wanton disregard for federal law and the rights of the Plaintiff herein.

38. The violations brought forth herein began and occurred in 2023 within the statute of limitations as defined in the FCRA, 15 U.S.C. § 1681p.

## *AS AND FOR A FIRST CAUSE OF ACTION  Violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. 1681i et. seq.*

**Failure to Conduct Reasonable Investigation and Maintain Reasonable Accuracy**

39. At all times mentioned in this Complaint, Experian was a "consumer reporting agency," as referred to in 15 U.S.C. § 1681a(e).

40. At all times mentioned in this Complaint, LVNV was a Furnisher of information as referred to in 15 U.S.C. § 1681s-2 of the FCRA.

41. Plaintiff disputed the matter with Equifax as defined by 15 U.S.C. § 1681a of the FCRA.

42. Prior to the commencement of this action, Plaintiff disputed certain information about an LVNV account on Plaintiff's Equifax' consumer credit report.

43. Plaintiff disputed the Capital One account now with LVNV as being fraudulent and should have been removed.

44. The United States Court of Appeals for the Fourth Circuit held, that the FCRA requires furnishers to conduct detailed examinations of the documents underlying customer transactions before responding to inquiries about a customer's debt, instead of relying on computer databases that provide convenient, but potentially incomplete or inaccurate customer account information. See <u>Johnson v, MBNA America Bank</u>, No. 03123S (February 11, 2004).

45. Defendants' investigation process did not live up to the standards of <u>Johnson v, MBNA America Bank</u>, No. 03123S (February 11, 2004).

46. Defendants' investigation process did not live up to the standards of the Federal Trade Commission in the matter of <u>U.S. v. Performance Capital Mgmt.</u> (Bankr. C.D. Cal. Aug. 24, 2000).

47. Defendants violated the duty under 15 U.S.C. 1681i by verifying the above referenced account without obtaining any documentation in support of its contention that Defendants were legally responsible for the account.

## CLASS ACTION ALLEGATIONS

48. Plaintiff brings this action on her own behalf and on behalf of all others similarly situated pursuant to Fla. R. Civ. P. 1.220 for EQUIFAX AND LVNV violations of 15 U.S.C. §1681i(a)(1) and (2). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of the Rule.

49. The proposed Class is defined as:

> All consumers in the United States who disputed incorrect information being reported by furnisher LVNV with EQUIFAX where they failed to correct disputed incorrect information during a period beginning two years prior to the filing of this action through the time of judgment where the consumer's

       report was disseminated to others.

50. Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

51. There are questions of law and fact common to the class and these questions predominate over any questions affecting only individual class members. The principal question presented by this claim is whether the CRA Defendant violated the FCRA by failing to reinvestigate and contact the source of the disputed inquiry, or delete it, and whether the violation was willful.

52. The members of the class are unsophisticated consumers, whose rights will not be vindicated in the absence of a class action. Prosecution of separate actions by individual members of the classes would create the risk of inconsistent or varying adjudications resulting in the establishment of inconsistent or varying standards for the parties and would not be in the interest of judicial economy.

53. Plaintiff does not currently know the exact number of Class Members or their identities because such information is in Defendants' exclusive control and can only be ascertained by review of their records. However, Plaintiff believes that there are hundreds or thousands of Class Members, or at least the minimum amount of class members to constitute a class. The Class Members are sufficiently numerous and geographically dispersed; therefore, joinder of all Class Members is impracticable.

54. This action should be maintained as a class action because questions of law and fact common to class members predominate over any questions affecting only individual class members, and because a class action is a superior method for the fair and efficient adjudication of this controversy. The CRA's conduct described

in this Complaint stems from standard policies and practices, resulting in common violations of the FCRA. Class members do not have an interest in pursuing separate actions against Experian, as the amount of each class member's individual claim is small compared to the expense and burden of individual prosecution. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning the CRA's practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all class members' claims in a single forum.

55. Plaintiff's claims are typical of the Class.

56. The factual basis of Defendants' misconduct is common to all Class Members and resulted in injury to all Class Members.

57. There are numerous questions of law and fact common to the Class and those common questions predominate over any questions affecting only individual Class Members.

58. A class action is superior to other methods for the fair and efficient adjudication of this controversy. Treatment as a class action will permit many similarly situated persons to adjudicate their common claims in a single forum simultaneously, effectively, and without the duplication of effort and expense, and risk of inconsistent rulings that numerous individual actions would cause. Class treatment will also permit the adjudication of small claims by Class Members who otherwise might not be able to afford to litigate their claims individually. This class action presents no difficulties in management that would preclude maintenance as a class action.

59. This forum is particularly desirable for the prosecution of this class action because Defendants specifically target New York consumers, and the lead Plaintiff is domiciled in New York.

60. Litigating on a class action basis in this forum will decrease the cost of discovery and prosecution.

61. Plaintiff has suffered the harm alleged on behalf of the Class and has no interests antagonistic to the interests of any other Class Members. She is committed to the prosecution of this action and has retained counsel experienced in the prosecution of class actions and complex commercial actions. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class Members. Plaintiff is not aware of any other pending litigation concerning this controversy that involves Class Members.

62. Finally, the Class is readily definable, and Defendants' records exist in Defendants' files as to the class members.

## **LIABILITY AND DAMAGES**

63. Plaintiff re-states, re-alleges, and incorporates herein by reference, the previous paragraphs as if set forth fully in this cause of action.

64. At all times mentioned in this Complaint, various employees and/or agents of Defendants were acting as agents of Defendants and therefore Defendants were liable to for the acts committed by its agents and/or employees under the doctrine of respondent superior.

65. At all times mentioned in this Complaint, employees and/or agents of Defendants were acting jointly and in concert with Defendants, and Defendants is liable for the acts of

such employees and/or agents under the theory of joint and several liability because Defendants and its agents or employees were engaged in a common business venture and were acting jointly and in concert.

66. Plaintiff believes and asserts that he is entitled to $1,000.00 as against each Defendant in statutory damages, pursuant to 15 U.S.C. § 1681 et. seq.

67. Plaintiff believes and asserts that Defendants' actions were willful and intentional.

68. Because Defendants' acts and omissions were done willfully, Plaintiff requests punitive damages.

69. Plaintiff requests punitive damages against Defendants in the amount to be determined by the Court, pursuant to 15 U.S.C. § 1681n et. seq. and other portions of § 1681 et. seq.

70. For purposes of a default judgment, Plaintiff believes that the amount of such punitive damages should be no less than $9,000.00.

71. Plaintiff is also entitled to attorney fees pursuant to 15 U.S.C. § 1681 et. seq.

72. Plaintiff is entitled to any other relief that this Court deems appropriate and just under the circumstances.

WHEREFORE, Plaintiff, respectfully requests preliminary and permanent injunctive relief, and that this Court enter judgment in his favor and against the Defendants and award damages as follows:

    a) Actual damages pursuant to 15 U.S.C. § 1681n or alternatively, 15 U.S.C. § 1681o;

    b) Punitive damages pursuant to 15 U.S.C. § 1681n;

    c) Attorney's fees pursuant to 15 U.S.C. § 1681n or alternatively, 15 U.S.C. § 1681o;

    d) All damages on a classwide basis concerning LVNV.

    e) Any other relief that this Court deems appropriate and just under the circumstances.

## AS AND FOR A SECOND CAUSE OF ACTIONI – Violations of the Fair Debt Collection Practices Act against LVNV Funding

73. Plaintiff adopts and incorporates the allegations in Paragraphs 1-61.

74. Defendant LVNV is a debt buyer and considered a debt buyer as LVNV purportedly and intended to buy the debt when it was in default.

75. Defendant has failed to correct the credit reporting of the debt and delete same even though Plaintiff properly disputed the debt with Equifax.

76. Defendant LVNV's actions as set forth herein with the paragraphs incorporated herein violate the Fair Debt Collection Practices Act.

77. Plaintiff brings this cause of action as a class action against LVNV

78. Plaintiff is entitled to damages.

WHEREFORE, Plaintiff respectfully demands the entry of entry of judgment against Defendant LVNV, awarding Plaintiff damages as follows:

    a. Statutory and actual damages provided under the FDCPA, 15 U.S.C. § 1692(k);

    b. Attorney fees and costs incurred in bringing this action as provided by statute; and

    c. Any other relief that this Court deems appropriate and just under the circumstances for the entire class.

Dated: August 9, 2022

/s/ Adam J. Fishbein
Adam J. Fishbein, P.C. (AF-9508)
Attorney At Law
Attorney for the Plaintiffs
735 Central Avenue
Woodmere, New York 11598
Telephone: (516) 668-6945
Email: fishbeinadamj@gmail.com

Plaintiffs request trial by jury on all issues so triable.

/s/ Adam J. Fishbein
Adam J. Fishbein (AF-9508)